UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CARLSON YOUNG                                            CIVIL ACTION

VERSUS                                                   NO. 12-2877

SHERIFF MARLIN GUSMAN                                    SECTION "G" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Carlson Young, was formerly[1] incarcerated in the Orleans Parish Prison system ("OPP") in New Orleans, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman alleging that while incarcerated in OPP in  2012 and early 2013, he received inadequate medical care and experienced unconstitutional conditions of confinement. He seeks monetary damages and injunctive relief. Record Doc. No. 1 (Complaint at ¶ V).

On February 5, 2013, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Tim Richardson, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

---

[1]After the Spears hearing, Young advised the court that he had been transferred from OPP to the LaSalle Correctional Center in Olla, Louisiana, Record Doc. No. 15, and then released in April 2013. Record Doc. No. 16.

## THE RECORD

Plaintiff testified that he was incarcerated in OPP as a pretrial detainee following his arrest in April 2012 on drug charges. He stated that he was scheduled to return to court for further proceedings in his criminal case on February 21, 2013, but did not yet have a trial date. Young confirmed that he asserted only a single claim in his original complaint in this case; specifically, that he received inadequate medical care for his psychiatric problems, including bipolar disorder, while in OPP.  He confirmed that he had received the medical records produced by the sheriff in response to my previous order, Record Doc. Nos. 6 and 13, and that they are accurate.

As to his medical care claim, Young testified that he was first diagnosed with bipolar disorder at the New Orleans Central City Mental Health Clinic in 2007.  He testified that before his arrest, he was receiving out-patient counseling and taking Seroquel,[2] a medication for his bipolar condition.  He complained that while in OPP, despite having advised prison officials of both his condition and his medication needs, he did not receive his medication.  "By being charged with the charge that I have (illegal drug charges), they was telling me that I wasn't eligible for to get my medication, and

---

[2]Seroquel (generic name: quetiapine fumarate) "is prescribed for the treatment of schizophrenia, a mental disorder marked by delusions (false beliefs), hallucinations, disrupted thinking, and loss of contact with reality.  It is also used for the treatment of manic and depressive episodes associated with bipolar disorder." PDRhealth website (available at www.pdrhealth.com).

I've seen the psyc doctor and everything, and they still refuse to get my medicine," he said.

Young confirmed that he saw a psychiatrist at the jail, as reflected in his medical records, on November 26, 2012.  He identified the psychiatrist as Dr. Higgins.  He said the psychiatrist advised him that he was "still waiting for paperwork" from the Central City clinic. According to the medical records concerning that psychiatric visit, the doctor's evaluation of Young was that the Central City clinic "would not treat him until he was clean" of his heroin and cocaine use, and his psychiatric diagnosis was "heroin and cocaine dependence . . . drug-seeking behavior." Record Doc. No. 13 ("Initial Psychiatric Evaluation" and "Psychiatric Treatment Plan - Orders," 11/26/12).  Young confirmed in his testimony that before his arrest he was addicted to both heroin and cocaine. Young did not know why the psychiatrist's report included the notation "no psyc meds necessary at this time," but he said he had "a hunch" that because he was an abuser of addictive illegal drugs before his arrest, the doctor had decided not to prescribe Seroquel.

Young testified that he was seen by a psychiatrist on one other occasion while in OPP, but he still did not receive his medication. He also confirmed the notations in his medical records that he was seen by a social worker sent from the state Feliciana

Forensic Facility several times while in OPP for "classes" in "a little program," but the program was stopped because of lack of adequate security to staff the sessions.

Asked what problems he experienced while in OPP as a result of the failure to receive his medication, he stated that he cannot "move around" as much as he would like and that his situation has been very stressful. He noted that he had experienced a variety of family and other problems before his arrest.

Young also confirmed, as subsequently alleged in his written statement of facts submitted to the court in response to my order, Record Doc. Nos. 9 and 11, that he also seeks to assert a second claim in this case; specifically, that he has been subjected to various unconstitutional conditions of confinement at OPP.

He complained that he had been taken outdoors for recreation or physical exercise only three (3) times to play basketball during his ten months of incarceration.  He also complained that the water available to drink comes straight from the faucet and is not cold. Young complained that he no longer receives milk to drink and that his food is inadequate.  He stated that he receives three meals a day, including cereal or oatmeal for breakfast; bread, beans, vegetables and other hot food for lunch and dinner.

Young complained that the conditions in which he lived were dirty, with excessive dirt and dust in the OPP tents facility where he had been incarcerated for nine weeks. He said that he was confined in the House of Detention unit at OPP for about three weeks

before being moved to the tents.  He also complained that he has a callous on the bottom of his foot, for which he must wait about a month before he can see a doctor, and he blamed his foot problems on dirt, particularly in the shower area, which cannot be adequately cleaned because the materials he is being supplied to clean the area do not work.  He said he was provided with medication for his foot callous after being seen by a doctor, but he seeks "a second opinion" concerning it.

Young repeated on numerous occasions that his principal complaint in this case is that he needs a Seroquel prescription for his bipolar condition. "I really need my medicine . . . and I'd feel a whole lot better," he said in conclusion.

## ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are

clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th

Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

      The purpose of a Spears hearing is to dig beneath the conclusional allegations of

a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the

plaintiff an opportunity to verbalize his complaints, in a manner of communication more

comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at

such an evidentiary hearing is in the nature of an amended complaint or a more definite

statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir.

1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the

actual nature of the complaint, it may also appear that no justiciable basis for a federal

claim exists."  Spears, 766 F.2d at 182.

      The court may make only limited credibility determinations in a Spears hearing,

Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d

318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504

U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as

additional evidence, as long as they are properly identified, authentic and reliable.  "The

Court should allow proper cross-examination and should require that the parties properly

identify and authenticate documents.  A defendant may not use medical records to refute

a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[3]

## II.   MEDICAL CARE

Young was a pretrial detainee at all relevant times about which he complains. Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. <u>Bell v. Wolfish</u>, 441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186

---

[3]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1746 (2012) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

(5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

9

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."  Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991));

accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Tex, Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997) . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770.  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."  Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue.  See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").  Therefore, the "deliberate indifference" standard applies and Young must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the conditions Young described, mental problems, including bipolar disorder, constituted a serious medical need that posed a substantial risk of harm in Young's particular circumstances. Young did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d

1176, 1188 (11th Cir. 1994) (citing <u>Monmouth County v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987).  As to his mental health condition, the medical records reveal no suicidal or other physically harmful ideation.  While some courts have characterized mental illnesses as a "serious medical need" for purposes of constitutional analysis in Section 1983 claims by detainees, they have generally done so in circumstances in which the plaintiff also exhibited seriously harmful or severe symptoms or other ailments in combination with a mental illness sufficient to render plaintiff's overall condition serious.  <u>See</u> <u>Lemaire v. Maass</u>, 745 F. Supp. 623, 636 n.8 (D. Ore. 1990), <u>vacated on other grounds</u>, 12 F.3d 1444 (9th Cir. 1993) (depression in combination with epilepsy, hypertension and vertigo presented serious medical need requiring immediate attention); <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1194 (9th Cir. 2002) (manic depressive condition exhibited by wild, physically combative behavior leading to heart attack presented serious medical condition by detainee); <u>Mahan v. Plymouth County House of Corrections</u>, 64 F.3d 14, 16, 18 (1st Cir. 1995) (depression including severe anxiety attacks and other "serious symptoms . . . actually experienced while detained" presumed by the court to constitute serious medical need).  The symptoms described by Young and the medical records do not reflect that he had a serious mental health need during his stay in OPP commensurate with these cases.

Even assuming, however, without concluding that plaintiff's conditions presented serious medical need for constitutional purposes, Young has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials.  His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in OPP.

Young testified and his medical records confirm that, while in OPP, he was seen by a psychiatrist and in a mental health counseling program conducted by a social worker sent by the state Feliciana Forensic psychiatric facility.  As to his mental conditions, Young's testimony established that the psychiatrist at OPP specifically exercised his professional medical judgment in determining that in light of Young's prior abuse of heroin and cocaine and his exhibition of "drug seeking behavior," provision of the Seroquel Young was requesting was not medically appropriate. Thus, the medical records establish that Young's conditions were monitored and addressed by medical personnel during his stay in OPP.

This record does not support an inference that OPP officials were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.  See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d at 754) (Plaintiff with injured hand and bruises failed to allege

14

deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.); Greer v. Tran, 124 F. App'x 261, 262 (5th Cir. 2005) (no deliberate indifference to serious medical needs when inmate was tested for diabetes mellitus, which was ruled out, although he ultimately died after falling into a diabetic ketoacidotic coma);  Harris v. Donaldson, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995) (no deliberate indifference where prisoner received medical treatment, including blood monitoring, medication and other attention, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for his chronic condition).

Although Young has alleged that he did not receive the treatment he thought was necessary, and he expressed dissatisfaction with the overall quality of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added).  No such showing has been made on the current record.  In Young's case, the

decision of the examining psychiatrist at OPP not to provide a patient with a history of heroin and cocaine abuse who – in the doctor's professional opinion – was exhibiting "drug seeking behavior," was a classic example of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Contentions like Young's that amount to a mere disagreement with the quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment

are inconsistent with inference of deliberate indifference); <u>Williams v. Browning</u>, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

III.    <u>CONDITIONS OF CONFINEMENT</u>

Young complained that he had been taken outdoors for recreation or physical exercise only three (3) times to play basketball during his ten months of incarceration. He also complained that the water available to drink comes straight from the faucet and is not cold. Young complained that he no longer receives milk to drink and that his food is inadequate.  He stated that he receives three meals a day, including cereal or oatmeal for breakfast; bread, beans, vegetables and other hot food for lunch and dinner.

Young also complained that the conditions in which he lives are dirty, with excessive dirt and dust in the tents facility at OPP where he has been incarcerated for

nine weeks.  He blamed his foot problems, including a callous on the bottom of his foot, on dirt, particularly in the shower area, which cannot be adequately cleaned because the materials he is being supplied to clean the area do not work.

Young was a pretrial detainee at all relevant times about which he complains. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  McCarty v. Zapata County, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth, 74 F.3d 633, 636 (5th Cir. 1996)); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).  In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were

18

sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies.  Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Young's allegations do not constitute violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety.  Farmer, 511 U.S. at 847.  A prison official cannot be held

19

liable "unless the official <u>knows of and disregards an excessive risk to inmate health or</u> <u>safety</u>; the official <u>must both be aware of facts</u> from which the inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>."  <u>Id.</u> at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard</u>, 114 F.3d at 551 (5th Cir. 1997) (quoting <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

Young's written allegations and testimony establish neither of these two requirements. The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation. Young alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.  <u>Whitnack v. Douglas County</u>, 16 F.3d 954, 958 (8th Cir.

1994); <u>Knop v. Johnson</u>, 977 F.2d 996, 1013 (6th Cir. 1992); <u>Robinson v. Illinois State Corr. Ctr.</u>, 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  <u>Burton v. Cameron County</u>, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing <u>Green v. Ferrell</u>, 801 F.2d 765, 771 (5th Cir. 1986)); accord <u>Benshoof v. Layton</u>, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); <u>Gates v. Cook</u>, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  <u>Holloway v. Gunnell</u>, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  <u>Talib v. Gilley</u>, 138 F.3d 211, 215 (5th Cir. 1998) (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981)); accord <u>Hernandez</u>, 522 F.3d at 560.

None of Young's allegations about the conditions at OPP establish constitutional violations. <u>See</u> <u>Davis</u>, 157 F.3d at 1006 (<u>no</u> constitutional injury when plaintiff was confined in "filthy" cell) (citing <u>Smith v. Copeland</u>, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); <u>Davis v. St. Charles Parish Corr. Ctr.</u>, No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing <u>Talib</u>, 138 F.3d at 215); <u>Wilson v. Lynaugh</u>, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained

of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In two cases, the Fifth Circuit has held that extreme, <u>virtually</u> <u>permanent</u> conditions in cells that contained excrement and other filth violate the Eighth Amendment.  In <u>Harper v. Showers</u>, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in <u>Gates v. Cook</u>, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found <u>no</u> constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" <u>Id.</u> at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)).

The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days.  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Young do not rise to the level of a constitutional violation.  The conditions he experienced in the OPP tents were neither virtually permanent nor an extreme deprivation of the type that might offend the Constitution.

Moreover, Young cannot establish "deliberate indifference."  He concedes that he was provided with supplies to clean the shower area, but complained that it cannot be adequately cleaned because the materials he is being supplied to clean the area do not work.  Prison officials can constitutionally require inmates to keep their cells, living space and clothing clean by providing, or by requiring non-indigent inmates to purchase, cleaning supplies.  Blake v. Hall, 668 F.2d 52, 57-58 (1st Cir. 1981); Lancaster v. Tilton, No. C 79-01630 WHA, 2008 WL 449844, at *19 (N.D. Cal. Feb. 15, 2008) (citing Gates, 376 F.3d at 342; Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981)); Sardon v. Peters, No. 04-C-7505, 1995 WL 609147, at *8 (N.D. Ill. Oct. 13, 1995). "This Eighth Amendment analysis does not change merely because the conduct of some inmates may

have caused or contributed to the conditions." <u>Roberts v. County of Mahoning</u>, 495 F. Supp. 2d 670, 690 (N.D. Ohio 2005) (citing <u>Blake</u>, 668 F.2d at 57-58).

In the instant case, Young merely disagrees that these efforts and supplies were adequate. <u>See</u> <u>Tallmore v. Hebert</u>, No. 07-1220, 2008 WL 2597939, at *2 (W.D. La. May 28, 2008) (Hill, M.J.) (citing <u>Davis</u>, 157 F.3d at 1006; <u>Daigre v. Maggio</u>, 719 F.2d 1310, 1312 (5th Cir. 1983)) ("Clearly, prisons need not be completely sanitized or as clean as one's home might be . . . . There is simply no constitutional requirement that any specific type of disinfectant be used by prison officials.").

As to his allegation that dirt in the shower area caused him to suffer foot problems, including a callous on the bottom of his foot, his medical records do not support the conclusion that any of these conditions was serious or even related to any unsanitary condition. At a minimum, unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant physical or emotional injury resulting from the challenged conditions." <u>Strickler v. Waters,</u> 989 F.2d 1375, 1381 (4th Cir.), <u>cert. denied</u>, 114 S. Ct. 393 (1993); <u>accord</u> <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 931 (1994). A foot callous is not such a condition.

Any harm that Young may have suffered by the minor foot condition he describes in this case was not serious and did not rise to the level of a constitutional violation. <u>See, e.g.</u>, <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists with some

bleeding not serious); Griffin v. DeRobertis, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious); cf. Barker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (pneumonia is serious medical need). Certainly, plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  See Hill, 40 F.3d at 1188 (medical need is serious only when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).  None of Young's injuries rise to the level of serious medical needs for constitutional purposes.

Similarly, his complaints about inadequate outdoor exercise fail to state a cognizable Section 1983 claim of violation of his constitutional rights.  Young has not presented any evidence that his limited outdoor exercise caused any serious health hazard.  His medical records reflect no such deleterious health effect.  Young merely speculates that he would have benefitted from more outdoor exercise.  This speculation is insufficient to establish either a substantial risk of serious harm or any actual injury. See Haralson v. Campuzano, 356 F. App'x 692, 697 (5th Cir. 2009) (inmate who was denied out-of-cell exercise for seven months while in the prison infirmary failed to raise a genuine issue of material fact as to whether he suffered a serious injury sufficient to

constitute an Eighth Amendment violation); Hernandez v. Velasquez, 522 F.3d 556, 561 (5th Cir. 2008) (Assuming the evidence created a fact issue whether plaintiff suffered from muscle atrophy, stiffness, loss of range of motion, and depression as a result of lack of out-of-cell exercise for 13 months, "there is nonetheless no indication these conditions posed a substantial risk of serious harm.  The district court properly concluded there was no genuine issue as to whether Hernandez suffered a 'serious illness or injury' sufficient to constitute an Eighth Amendment violation."); Doolittle v. Holmes, No. 06-986-C, 2010 WL 22552, *6 (M.D. La. Jan. 4, 2010) ("[A]lthough the plaintiff alleged in his Complaint that he suffered muscle atrophy as a result of his confinement for 2 1/2 months without exercise, there is no evidence to support this conclusory assertion.  The plaintiff has provided nothing to support his claim of muscle atrophy or to show its extent or duration," and his medical records revealed no complaints about muscle atrophy during the relevant time period.).

Plaintiff's complaints that the water available to drink comes straight from the faucet and is not cold enough, that he no longer receives milk to drink and that his food is inadequate also fail to state a constitutional claim.  Certainly, food and water must be provided to prisoners.  States violate the Constitution if they fail to provide prisoners with reasonably adequate food, water, clothing, shelter and sanitation.  Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)).

However, plaintiff's allegations in this case, while describing less than ideal conditions, do not state a violation of plaintiff's constitutional rights. Constitutional standards require only that prison authorities provide an inmate with the basics in this regard, including "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'"  Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999) (quoting Green v. Ferrell, 801 F.2d 765, 770 (5th Cir. 1986)).  Plaintiff has failed to set forth facts to establish a deprivation of or deviation from this quality of food or water. The Constitution does not require that convicted inmates be provided with particular consumables at a certain temperature or tastiness or with every culinary amenity which one may find desirable.  Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983); Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520 (1979) (citing Newman v. Alabama, 559 F. 2d 283, 291 (5th Cir. 1977)).

The Constitution also does not require that plaintiff receive particular amounts or kinds of food.  Green, 801 F.2d at 770.  "'Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation.' Even on a regular, permanent basis, two meals a day may be adequate."  Berry, 192 F.3d at 507 (quoting Green, 801 F.2d at 770-71).  Further, "inmates cannot expect the amenities, conveniences and services of a good hotel."  Harris v. Fleming, 839 F. 2d 1232, 1235 (7th Cir. 1988).  Plaintiff stated that he receives three meals a day, including cereal or oatmeal for

breakfast; bread, beans, vegetables and other hot food for lunch and dinner. Plaintiff was never denied food or water.  Young's complaints about the water and food at the jail are legally frivolous and must be dismissed.

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants are responsible for constitutionally inadequate unsanitary conditions of confinement, food or outdoor exercise. For all of the foregoing reasons, plaintiff's complaints in this case about the conditions of his confinement advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

## **<u>RECOMMENDATION</u>**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

28

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[4]

New Orleans, Louisiana, this ___13th___ day of May, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[4]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.